## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00517-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. TONY JACKSON,

      Defendant.

---

## PLEA AGREEMENT

---

      The United States of America, by and through Emily Treaster, Assistant United States Attorney, and the defendant, TONY JACKSON, personally and through counsel, David Johnson, Assistant Federal Public Defender, submit the following Plea Agreement.

### I. PLEA AGREEMENT

A. **Defendant's Obligations**

      1. **Count of Conviction**

      The defendant agrees to plead guilty to Count One of the Indictment, charging a violation of 49 U.S.C. § 46504, Interference with Flight Attendants. The defendant also agrees to waive his appellate rights as detailed below.

      2. **Sentencing Position**

      As part of this agreement, the defendant agrees not to seek a sentencing date before May 6, 2020. He furthermore agrees to recommend that he receive three years' supervised release. This is because, as set forth below, the government has agreed to recommend a sentence of time

1



served if the sentencing occurs on or after May 6, 2020 and the defendant remains in custody until sentencing.

### 3. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined.  Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 7; or (3) the government appeals the sentence imposed.  If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255).  This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

B. **Government's Obligations**

   1. **Sentencing Position**

The government agrees to recommend a sentence of time served if the sentencing takes place on or after May 6, 2020 and the defendant remains in custody until sentencing.  The government will recommend three years' supervised release, which is the statutory maximum.

   2. **Acceptance of Responsibility**

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 2-point reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate.

C. **Effect of Withdrawal from Plea Agreement**

The parties stipulate and agree that the government may withdraw from this Plea Agreement under any of the following circumstances: 1) if the defendant does not plead guilty to Count One of the Indictment; 2) if the Court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal, or remand of the count of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered, the crime of Interference with Flight Attendants, 49 U.S.C. § 46504, are as follows:

*One*:  The defendant was on an aircraft in flight in the United States.

*Two*:  The defendant intimidated a flight attendant of the aircraft.

3

*Three*: The intimidation interfered with or lessened the ability of the flight attendant to perform his or her duties.

*Definition*: To "intimidate" someone is to intentionally and voluntarily say or do something that would cause a person of ordinary sensibilities to fear bodily harm or to fear that he or she is otherwise at risk.  It is also to say or do something to make another person refrain from doing something that the person would otherwise do or do something that the person would otherwise not do.  In order to intimidate, there is no requirement that the person intend to intimidate.[1]

### III.  STATUTORY PENALTIES

The maximum statutory penalty for a violation of 49 U.S.C. § 46504 is not more than 20 years' imprisonment, not more than a $250,000 fine, or both; not more than 3 years' supervised release; and a $100 special assessment fee.

### IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury.  If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

---

[1] *See United States v. Lynch*, 881 F.3d 812, 815-17 (10th Cir. 2018); *United States v. Murphy*, 556 F. Supp. 2d. 1232, 1236-37 (D. Colo. 2008); *see also* Eleventh Circuit Pattern Jury Instructions (Criminal Cases), § O118 (2019).  The Tenth Circuit does not have a pattern instruction on this crime.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this Plea Agreement.  That basis is set forth below.  Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.  To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the Plea Agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or the Court's overall sentencing decision.

The parties stipulate to the following facts:

On November 24, 2019, the defendant boarded American Airlines flight AA2258 at McCarran International Airport in Nevada intended for Chicago O'Hare International Airport. The flight departed as normal.

While in flight, after beverage service had been completed, a granddaughter and her grandmother, in seats 18B and 18A respectively, came to the back of the plane to speak with flight attendants.  They were visibly upset and explained that the defendant, their seatmate in 18C, was acting erratically and was upsetting both women.  He claimed that one of the women "had a knife."  The two women expressed fear to flight attendants S.L. and T.R. and requested to

5

be moved.

At approximately the same time, flight attendants and passengers observed the defendant quickly move forward to the cockpit and approach E.R.-G., a flight attendant in the first-class cabin. The defendant told E.R.-G. that one of the passengers seated next to him had a knife. An additional flight attendant, C.T., joined the defendant and E.R.-G near the cockpit. The defendant expressed concern for his safety and asked that authorities respond to the airplane. E.R.-G. and C.T. described that the defendant would not keep eye contact, acted erratically, and spoke loudly. He repeatedly said he felt threatened and was in fear.

C.T. attempted to diffuse the situation and get the defendant to return to his seat. C.T. assured the defendant that his seat was the safest place for him. C.T. also reported that the defendant kept changing his statement regarding the location of the knife. Initially, the defendant refused to go back to his seat, but eventually he reluctantly headed back toward his seat. E.R.-G remained at the front of the cabin to make sure that the flight deck remained secure.[2] Once the defendant reached his seat, he grabbed his suitcase and said that he would not move until the authorities came to meet the plane, claiming that his life was in danger. According to S.L., the defendant repeatedly said that he wanted this plane down now.[3]

Due to the defendant's increasingly erratic behavior and the escalating situation, it was decided to divert the plane and make an emergency landing in Denver for safety reasons. Two able-bodied male passengers were asked to sit next to the defendant. C.T. reported that the defendant's behavior continued to escalate, so it was decided that the defendant should be placed

[2] There is no evidence that the defendant attempted to breach the flight deck.
[3] The defendant states that this statement was a request to get off the plane.

6

in hand restraints (flex-cuffs).  The defendant allowed the two male passengers who were seated next to him to place the restraints on him.  One of the male passengers described how the defendant was crying, expressing fear, and wanting to call his daughters.  After the other passengers deplaned, the defendant was escorted off the plane.

The defendant admits that he intimidated flight attendants while on an aircraft in flight in the United States.  He further admits that the intimidation interfered with or lessened the flight attendants' ability to perform their duties.

## VI.  ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of sentence in this case is governed by 18 U.S.C. § 3553.  In determining the particular sentence to be imposed, the Court is required to consider seven factors.  One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission

In order to aid the Court, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines.  To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The defendant agrees and consents that facts that determine the offense level will be found by the Court, by a preponderance of the evidence, and that the Court may consider and use any reliable evidence, including hearsay and the facts outlined in the Presentence Report.  The parties further agree that the stipulation of facts in this Plea Agreement will also be used by the Court in determining the sentencing guideline range.

7

The parties provide the following estimated guideline range for the Court's consideration pursuant to 18 U.S.C. § 3553(a)(4). The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below. Any estimation by the parties regarding the appropriate advisory guideline application does not limit the positions the parties may take at sentencing on the appropriate sentence for the Court to impose; rather, those limits are set out in Part I of this Plea Agreement. The Court may impose any sentence, up to the statutory maximum, regardless of any advisory guideline range computed, and the parties agree that the Court is not bound by any position of the parties.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

To the extent the parties disagree about the estimated guideline sentencing factors, the computations below identify the factors which are in dispute. § 6B1.4(b).

**Offense Level**: The base guideline is § 2A5.2.

A. The base offense level for this offense is **9**. § 2A5.2(a)(4).

B. No specific-offense characteristics apply.

C. No victim-related, role-in-offense, obstruction and/or multiple count adjustments apply.

D. The defendant should receive a decrease in the offense level by -2 based upon his acceptance of responsibility.  § 3E1.1(a).

E. The adjusted offense level is 7.

**Criminal History Category**

F. The parties acknowledge and agree that the estimation regarding the defendant's criminal history is tentative.  The defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court.  The defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment.  Based upon the facts known at this time regarding the defendant's criminal history, the parties believe that the defendant falls within Criminal History Category ("CHC") **VI**.  § 4A1.1.

G. The career offender and repeat and dangerous sex offender adjustments tentatively do not apply. § 4B1.1; § 4B1.5.

**Guideline Range**

H. The guideline range resulting from the estimated offense level of 7 and the estimated criminal history category of VI is **15 to 21** months' imprisonment.  However, the imprisonment range could be from 0 months (bottom of CHC I) to 21 months (top of CHC VI).  The guideline range would not exceed, in any case, the statutory maximum of 20 years applicable to the count of conviction.

I. Pursuant to § 5E1.2, assuming the estimated offense level of 7, the fine range for this offense would be $1,000 to $9,500, plus applicable interest and penalties.

J. Pursuant to § 5D1.2, if the Court imposes the term of supervised release, that term shall be not more than 3 years.

## VII.  **ENTIRE AGREEMENT**

This document states the parties' entire agreement.  There are no other promises,

agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or

implied.  In entering this agreement, neither the government nor the defendant have relied, or are

relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 2-6-2020

Tony Jackson
Defendant

Date: 2/6/2020

David Johnson
Attorney for Defendant

Date: 2/11/20

Emily Treaster
Assistant U.S. Attorney

10