IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00517-DDD

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TONY JACKSON,

        Defendant.

**DEFENDANT'S OBJECTION TO RESTITUTION**

        Defendant, Tony Jackson ("Mr. Jackson"), by and through undersigned counsel, David E. Johnson, hereby files this Objection to Restitution, and in support thereof states as follows:

**INTRODUCTION**

        Mr. Jackson is an indigent person with no property, no assets, scant employment history, little earning capacity, and two dependents to help support. His offense in this case was not one involving intent; he had no desire or intent to do harm. At the time of sentencing, he will have been in custody a total of one-day-shy of 24 weeks. Even with a time-served sentence (as requested by the parties and the Probation Office), the parole detainer will likely cause him to remain in custody pending the resolution of a parole revocation proceeding, which itself is based upon this case. Once Mr. Jackson is out of custody, he will do all he can to get himself back on his feet again. He will try to find work (made more difficult by his criminal record). He will help support his daughters again. He will begin life on the outside again, and he is going to work hard – perhaps even learn a new trade. We should all agree, however, that it will not be easy.

Saddling him with a $32,830 financial obligation is the exact thing that should not be done for a person who wants to right his life after committing this unintentional offense.

On April 28, 2020, a revised Presentence Report was filed. *See* Doc. 39 ("PSR"). A restitution request from American Airlines was summarized as follows:

> American Airlines is requesting $32,830 in restitution. This amount stems from: $1,956 for flight hour driven maintenance; $6,119 for fuel; $2,775 for crew costs; $588 for airport agents costs; $4,109 for revenue lost; $2,497 for goodwill lost; $696 for landing and navigation fees; $467 for departure driven maintenance; and $13,623 for passenger inconvenience ([which consists of the amounts:] $6,998 for ITE/travel vouchers/miles; $6,502 for HMT vouchers; $122 for mishandled bags).

PSR at ¶ 30.[1] The PSR concludes: "[T]he Court may consider ordering restitution." *Id*. The restitution request actually made by American Airlines is found in Exhibit C of the revised PSR. *See* Doc. 39-3.[2] Much, if not all, of the request seeks compensation for alleged losses that the statute does not permit recovery. Even if the statute did encompass the requested categories of loss, the current request is inadequate and suffers from a lack of substantiation.

This Court should not impose restitution.[3]

---

[1] American Airlines' own calculation is off by $1. The category of "passenger inconvenience" is said to total $13,623. However, the subcategories said to constitute that category total $13,622.

[2] American Airlines is incorrect about Mr. Jackson's conduct in this case. For example, Mr. Jackson *never* "made comments of having a knife on board" the plane. *See* Doc. 39-3 at 2. He made comments about his fear that *others* had a knife on the plane. As body camera footage shows, this exact exchange occurred between an officer and a flight attendant about a report of "weapons": Question: "He wasn't the one who said he had them?" Answer: "No, he was saying other people had them." Nor is the airlines correct when it stated: "passengers reported that Mr. Jackson 'lunged' at them." *Id*. No passengers reported this. A flight attendant did describe to an officer that Mr. Jackson "lunged" "one time" at one passenger (not "passengers") who he said he thought had a knife. Mr. Jackson does not recall doing that.

[3] Undersigned counsel first communicated the objections contained in this filing to government counsel on Wednesday, April 29, 2020. The parties continue to confer.

## ARGUMENT

Restitution should not be imposed in this case. Specifically, Mr. Jackson objects to the imposition of restitution on two grounds. The first ground relates to Mr. Jackson's ability to pay and the other factors listed in Section 3663(a)(1)(B). The second ground relates to the substance of the airline's request.

### I. Imposition of Restitution Would Not Be Supported by Mr. Jackson's Ability to Pay and the Other Factors of Section 3663(a)(1)(B).

Restitution in this case is not mandatory. Mandatory restitution is governed by Section 3663A, the Mandatory Victims' Restitution Act ("MVRA"). However, Mr. Jackson's offense is governed by Section 3663(a), the Victim and Witness Protection Act ("VWPA"). "The primary difference between the two statutes is that for certain offenses specified in the MVRA, an award of restitution is mandatory and is calculated by looking to the victim's loss, without regard to the defendant's ability to pay an award." *United States v. Randle*, 324 F.3d 550, 555 n.2 (7th Cir. 2003).[4] *See also generally United States v. Harwood*, 854 F.Supp.2d 1035, 1051-53 (D.NM Feb. 13, 2012) ("Law Regarding Restitution").

The statutory factors for consideration under the VWPA were listed in Mr. Jackson's previous filing. *See* Doc. 36 at 4 (quoting 18 U.S.C. § 3663(a)(1)(B)). Under the VWPA, there needs to be findings on a defendant's ability to pay. *United States v. Leftwich*, 628 F.3d 665, 668 (4th Cir. 2010), *citing United States v. Blake*, 81 F.3d 498, 505 (4th Cir.1996) ("Such findings

---

[4] Because the statutes are otherwise similar, court decisions interpreting the VWPA are helpful in construing the language of the MVRA, and vice versa. *See United States v. Wilfong*, 551 F.3d 1182, 1185 n.3 (10th Cir. 2008); *Randle*, 324 F.3d at 5556 n.3.

must tie the amount and type of restitution ordered to the financial resources, financial needs, and earning ability of the defendant.").

Restitution should not be imposed in this case because any restitution amount would be inconsistent with Mr. Jackson's ability to pay. Because this is a VWPA case, the Tenth Circuit has "held unequivocally" that any imposition of restitution must be supported by the defendant's ability to pay. *United States v. McIlvain*, 967 F.2d 1479, 1481 (10th Cir.1992). "[W]hen a district court orders restitution it must be consistent with a defendant's ability to pay." *Id.* (citations omitted). *See also United States v. Kelley*, 929 F.2d 582, 587 (10th Cir.1991) (reversing restitution award); *United States v. Dunning*, 929 F.2d 579, 581 (10th Cir.1991) (same); *United States v. Patty,* 992 F.2d 1045, 1052 (10th Cir. 1993) (same); *United States v. Clark*, 901 F.2d 855, 857 (10th Cir.1990) (same). The Tenth Circuit has said it "will not uphold the district court's exercise of discretion if the record is devoid of any evidence that the defendant is able to satisfy the restitution order." *Patty*, 992 F.2d at 1052.

In the case of an indigent defendant – like Mr. Jackson – there must be a showing and a finding that the defendant has "**some assets or earning potential** and thus possibly may be able to pay the amount ordered." *McIlvain*, 967 F.2d at 1481 (emphasis added); *see also United States v. Gilbreath*, 9 F.3d 85, 86 (10th Cir. 1993) ("Although indigency does not preclude an order of restitution, the order must be supported by at least some indication that a defendant has assets or earning potential."). The potential for repayment cannot be based on mere chance or hope. *United States v. Rogat*, 924 F.2d 983, 985 (10th Cir.1991).

Applying these principles, restitution should not be imposed. The requested amount of $32,830 would equate to monthly payments of $912 over the course of Mr. Jackson's three-year

supervision period. *See Patty*, 992 F.3d at 1052. Although the restitution request is not in the millions-of-dollars range, for a person in Mr. Jackson's situation, it may as well be.

As verified by his mother, Mr. Jackson has no assets. PSR at ¶ 102. He owns no property. Prior to his incarceration in this case, he lived with his parents. PSR at ¶ 80. He does not own a car or other vehicle. In fact, Mr. Jackson does not even have a bank account. If anything, Mr. Jackson is in $470 debt for past-due utility payments and money owed to the Illinois Department of Human Services. PSR at ¶ 103.

Nor has Mr. Jackson "demonstrated a significant earning capacity" or earning potential. *Rogat*, 924 F.2d at 986. Mr. Jackson's most recent employment (starting in June 2019) found him earning $10 an hour, working 25 to 30 hours a week, stocking shelves. PSR at ¶94. His fiancé explained how Mr. Jackson has lost that job while in custody in this case. *See* Doc. 40-1 at 6. In speaking with undersigned counsel's office, his fiancé described that Mr. Jackson "will be starting from scratch" in terms of employment. Once Mr. Jackson gets out of custody, he will likely begin with a "temp" agency, *see* PSR at ¶ 100, in all probability earning less than that $10 an hour figure. His earning potential is minimal.

Mr. Jackson's most consistent income-generating activity is scrap collecting with his father. *See* PSR at ¶ 73. Mr. Jackson described this during the PSR interview as "freelance". His mother described it as a "scrap-business." Doc. 39-2 at 3. The PSR's employment section makes frequent reference to this activity, describing it as collecting recycling items for money. *See* PSR at ¶ 95, 97, 99. What this shows is that Mr. Jackson works hard. He finds a way to earn money to live and provide. But, unfortunately even the hardest work-ethic does not translate into earning-

capacity. Mr. Jackson estimates he would earn, on average, $125 a week collecting scrap. This is hardly an adequate earning potential to assign a restitution obligation.

In any event, Mr. Jackson's future ability to engage in scrap collecting is unknown. Mr. Jackson was recently informed that his father's truck, used for scrap collecting, broke down. Undersigned counsel's office confirmed this with Mr. Jackson's fiancé. She described that scrapping was on hiatus due to the truck breaking down. Ms. Gomez also expressed concern that scrapping is too physically taxing on Mr. Jackson, especially because of his torn rotator cuff. She expressed a hope that Mr. Jackson will seek out manufacturing jobs that might employ a convicted felon. However, none existed at this time.

On that issue, Mr. Jackson's earning potential is hampered by his criminal history. Potential employers routinely perform background checks, severely limiting Mr. Jackson's ability to find employment. Furthermore, Mr. Jackson's criminal history is indicative of a lack of financial means and earning capacity --- replete with burglary/theft offenses, and lack of insurance. Mr. Jackson's criminal history encompasses 18 paragraphs in the PSR, four of which are juvenile. Half (9) are theft-related offenses,[5] and four (4) are related to suspended license or lack of insurance,[6] offenses which are often an indication of a lack of financial means. (The remaining five (5) paragraphs relate to one prior DUI in 2013, and four prior possession of drugs cases, the last of those being in 2001.)[7] Strapping Mr. Jackson with a $32,830 financial obligation will weigh him down in a way Mr. Jackson has not experienced before, even in his indigent past.

---

[5] PSR at ¶¶ 44, 45, 47, 49, 52, 53, 54, 60, and 61.
[6] PSR at ¶¶ 55, 56, 57, 58.
[7] *See* PSR at ¶ 59 (DUI); *id.* at ¶¶ 46, 48, 50, 51

6

Mr. Jackson's education does not belie a *de minimis* earning potential. Mr. Jackson earned his GED while in IDOC custody. PSR at ¶ 92. While the PSR provides his test scores, it did not provide the percentiles for those scores, which were respectively: 34th, 27th, 42nd, 31st and 58th percentile (the highest being for reading), a 38th percentile average. Passing the GED was difficult for Mr. Jackson. Further, Mr. Jackson has learned horticulture/landscaping and food sanitation. PSR at ¶ 93. But he has never actually worked or held employment in those fields. *See* PSR at ¶¶ 94-99. Any employment relating to those activities, he would be starting from the bottom.

Importantly, Mr. Jackson expressed a desire to learn welding. PSR at ¶¶ 93, 100. This is a skill Mr. Jackson hopes will lead him to long-term stable employment. *Ibid*. Again, this demonstrates Mr. Jackson's desire to get his life on the right path. But, of course, he has to learn it first, which will require time taking a course and, equally importantly, paying for that course. Imposition of a $32,830 financial obligation will prevent Mr. Jackson from having the time to improve himself, and it will take away from his ability to pay for any educational opportunities such a welding. Simply stated, a restitution obligation will prevent Mr. Jackson from furthering his education and skill-set. It will do more harm than good. *See United States v. Gilbreath*, 9 F. 3d 85 (10th Cir. 1993) ("Under those circumstances, the restitution award would frustrate the goals set by Congress and constitute an abuse of discretion."). Mr. Jackson's desire for further education, which a restitution obligation would hamper, is an appropriate factor the Court should deem appropriate for consideration. 18 U.S.C. § 3663(a)(1)(B)(i)(II).

Earnings that Mr. Jackson does make are spent on living expenses, bills, and supporting his daughters. He will also have to make payments for various treatments relating to his conditions of supervised release. *See* Doc. 39-1 at 4 (special conditions 1 and 2).

The statute requires this Court to consider the financial needs of Mr. Jackson, as well as his dependents. 18 U.S.C. § 3663(a)(1)(B)(i)(II). Mr. Jackson as two minor daughters, ages 8 and 6. PSR at ¶ 76.  Their mother is "a nail technician". PSR at ¶ 76. She described Mr. Jackson as someone who provides for his daughters, and is there for them in non-financial ways as well. *See* Doc. 40-1 (letter). As the PSR explains: Mr. Jackson "would provide financially for his daughters by purchasing their school supplies, uniforms, or anything else they needed." *Id*. at ¶ 76.  As his fiancé explained: "[H]e's on top of making sure that they [his daughters] always have clothing/shoes that fit properly." Doc. 40-1 at 5. Imposition of a restitution obligation will not only hinder Mr. Jackson's ability to become stable, but it will also hurt his daughters. *See United States v. Gomer*, 764 F.2d 1221, 1224 (7th Cir. 1985) ("The [statute] requires some principled balancing between the needs of the victims and the needs of the dependents." (construing 18 U.S.C. § 3580, renumbered § 3664 effective Nov. 1, 1986)).

A final factor this Court should "deem appropriate" here, § 3663(a)(1)(B)(II), is that, as explained by the government, "there is no evidence that the defendant intended to intimidate anyone." Doc. 42. This case warrants "treatment and monitoring." *Id*. Mr. Jackson argues it does not warrant a financial debt.

Ultimately, a restitution obligation would be an insurmountable obstacle to Mr. Jackson. It will do little more than make Mr. Jackson's life more difficult.  Mr. Jackson fears it sets him

8

up for failure. This Court should not place this financial burden on him in this case not involving intent. This Court should decline to impose restitution.

## II.     The Restitution Request Seeks Impermissible Recovery and is Unsubstantiated.

Regardless of Mr. Jackson's ability to pay and other Section 3663(a)(1)(B) factors, the airline's request itself is problematic for two reasons. First, it seeks restitution for expenses that are not covered by the VWPA statute. Because it is outside the scope of the statute, the airline seeks impermissible recovery. Second, the airline's request is inadequate and unsubstantiated. The government has not met its burden.

### A.     The Request Exceeds the Scope of the Statute.

Courts have no inherent power to order restitution; they may only do so as authorized by statute. *United States v. Gordon*, 480 F.3d 1205, 1210 (10th Cir.2007). *See also United States v. Hensley*, 91 F.3d 274, 276 (1st Cir.1996) ("Federal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute." (citation omitted)). In several ways, compensation under the VWPA is limited. "[T]he language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990); *see also Blake*, 81 F.3d at 506 ("the act that harms the individual must be . . . conduct underlying an element of the offense of conviction…."); *Randle*, 324 F.3d at 556 (there must be "a direct nexus between the offense of conviction and the loss being remedied"); *United States v. Menza*, 137 F.3d 533, 537 (7th Cir. 1998) (reversing restitution award).

Further, the statute does not permit recovery for all losses. Similar to the MVRA, the VWPA "specifically lists the kinds of losses and expenses that it covers." *Lagos v. United States*, 138 S.Ct. 1684, 1689 (2018). Importantly, unlike other federal restitution statutes, neither the VWPA nor the MVRA allow for recovery of *all* losses, even if they were proximately caused by the offense.[8] Instead, the VWPA and MVRA specify what is covered. The Supreme Court has acknowledged that this "will sometimes leave a victim without a restitution remedy sufficient to cover some expenses . . . which he undoubtedly incurred as a result of the offense." *Lagos*, 138 S.Ct. at 1689.

Recovery of some kinds of losses and expenses are specifically limited to particular types of cases. *See* 18 U.S.C. § 3663(b)(1) (damage or destruction of property cases); § 3663(b)(2) (bodily injury cases); § 3663(b)(3) (cases resulting in death). For that reason, restitution cannot be ordered under VWPA for lost income and emotional damages unless the victim suffered bodily injury, *i.e.,* physical harm. *See United States v. Mitchell*, 876 F.2d 1178, 1183 (5th Cir. 1989); *see also United States v. Sharp*, 927 F.2d 170, 174 (4th Cir. 1991) (holding that "the granting of restitution for lost income was improper" where the offense did not result in bodily injury); *United States v. Dayea*, 73 F.3d 229, 231 (9th Cir. 1995). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion

---

[8] *See* 18 U.S.C. §§ 2248(b)(3), 2259(b)(3), 2264(b)(3) ("For purposes of this subsection, the term 'full amount of the victim's losses' includes any costs incurred by the victim for ... (F) any other losses suffered by the victim as a proximate result of the offense."). The VWPA and MVRA do not contain such a provision and therefore do not allow for a similarly broad grant of restitution award. *Lagos*, 138 S.Ct. at 1689.

or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).  Had Congress intended to permit restitution for lost income and psychological care in all types of case, it could have done so. *Id*. § 3663(b)(2). Congress did not write the statute that way. Here, Mr. Jackson's offense of conviction did not involve bodily injury to a victim. The airline's request for "lost revenue" and "passenger inconvenience" is impermissible.[9]

Recovery of some kinds of losses and expenses are not permitted at all.  Indirect expenses, and consequential or incidental losses are not recoverable.  *United States v. Barton*, 366 F.3d 1160, 1167 (10th Cir.2004) (noting "there is general agreement that a restitution order under the MVRA cannot encompass consequential damages resulting from the defendant's conduct" and collecting cases); *United States v. Serawop*, 505 F.3d 1112, 1124 (10th Cir.2007) (citing *Barton*).  *See also Patty*, 992 F.2d at 1049 (indirect expenses, such as those incurred to recover a victim's losses, are not reimbursable under the VWPA, citing *United States v. Diamond*, 969 F.2d 961, 968 (10th Cir. 1992), which states "the VWPA does not authorize consequential damages"); *United States v. Schinnell*, 80 F.3d 1064, 1070-71 (5th Cir. 1996)

---

[9]  The airline's request for lost revenue is impermissible for another reason.  Even if the statute permitted it, the proper measure of loss would not be "revenue lost"; it would be "profit lost". Put another way, restitution would be based on net profit, not gross revenue. Restitution should not provide victims with "a windfall."  *United States v. Ferdman*, 779 F.3d 1129, 1132 (10th Cir. 2015. By seeking restitution on the basis of revenue, without taking into account costs, the airline's request would improperly order restitution in an amount "exceed[ing] the actual loss caused by the defendant's conduct."  *Id*.  *See United States v. Hudson*, 483 F.3d 707, 710 n.1 (10th Cir. 2007) (restitution "must be based on net lost profits, not on total retail price"); *United States v. Fair*, 699 F.3d 508, 514 (D.C. Cir. 2012) ("the actual loss to the . . . seller is the profit lost from the displaced sales—not the retail value of the goods that would have been sold."); *United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006) ("Because the purpose of the MVRA is to compensate a victim for its losses, the appropriate measure in this commercial setting is lost net profit.").

(explaining "the VWPA provides no authority for restitution of consequential damages" and collecting cases).

Here, neither the airline's request nor the PSR make any attempt to tie each part of the request to a compensable harm specified by the VWPA. Absent this tie, the request is impermissible.

The request consists significantly of indirect and consequential expenses. For example, the categories of "Goodwill Lost", "Passenger Inconvenience" and "Departure Driven Maintenance" are the epitome of consequential, incidental, or indirect expenses. Although such categories are ambiguous to begin with, this Court can easily conclude that the airline's mishandling of bags, or its decision to provide "snacks and beverages" or various "vouchers" is, at best, an indirect, consequential expense of Mr. Jackson's offense. *See* Doc. 39-3 at 2, 4. The same is true about transporting "a 'standby' crew" and thus "blocking seats". *Id*. at 2.  These claims are not recoverable under the statute.  Nor would it be foreseeable to Mr. Jackson's offense of conviction that the crew would "not be able to continue" the "work day" due to FAA regulations. *Id*.

The airline's request for "Flight Hour Driven Maintenance" (presumably maintenance done on an airplane after it has flown a specific number of hours) is similarly incidental and not tied to any VWPA provision.  Mr. Jackson's offense of conviction did not directly relate to any such expenditure. Other costs not tied to any VWPA provision are associated with "airport agents" or a departure from Denver ("departure driven maintenance"). *See Schinnell*, 80 F.3d at 1071 (explaining that the following costs are not recoverable under the VWPA: "accounting fees and cost to reconstruct the bank statements for the time period that the defendant perpetuated this

12

scheme, temporary employees hired by the company to reconstruct the monthly bank statements, and cost incurred by the company [in borrowing funds] to replace the stolen funds."). These expenses are not recoverable under the VWPA.

### B. The airline's request suffers from lack of information and thus the government has not met its burden.

Even if the airline's requests (or some subcategories thereof) were supportable under the statute, the request here fatally suffers from a lack of information or supporting basis. "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). "[S]peculative reimbursements" are not permitted. *Serawop*, 505 F3d at 1124. Nor may a court "simply 'rubber stamp' a victim's claim of loss based upon a measure of value unsupported by the evidence." *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015). The law "require[s] some precision when calculating restitution. Speculation and rough justice are not permitted." *Id*. (quoting *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir.2013)).

Here, the airline's categories are ambiguous and unsubstantiated. It is not explained what "flight hour driven maintenance" and "departure driven maintenance" entail or why they were a direct cost. Nor is it clear what type of costs are captured by the categories "crew" or "airport agents". As it relates to "fuel", the airline says that the fuel price is $2.02 a gallon, but does not explain how it calculated the total amount figure. Nor does it explain how the "revenue lost" figure was calculated. Especially problematic, there is no explanation for what constitutes the amorphous category of "goodwill lost" – what it means and how it was calculated. The airline did break the category of "passenger inconvenience" into three more-detailed subcategories, but

it made no attempt to justify its figures.  Nor did it attempt to provide verification of "landing and navigation fees".

Each and every one of the airline's submitted categories of loss suffers from this inadequacy.  In essence, the airline's terms are ambiguous, and its figures are not supported by specific factual allegations or independent documentations.  Instead, they are based solely on the assertions and largely unstated assumptions of the airlines.  This is insufficient.

The restitution request in this case is akin to the situation faced by the Tenth Circuit in *Ferdman*.  779 F.3d at 1137-40.  There, the district court imposed restitution based upon the "unverified statement" of the victim company, Sprint.  *Id*. at 1136. The Tenth Circuit reversed, cautioning the court from acting as a "rubber stamp".  It reversed, summarizing: "All we have before us are estimates of Sprint's expenses supported by the unverified signature of a Sprint officer." *Id*. at 1140.  *See also Menza*, 137 F.3d at 538 & 539 ("[W]e find that there is an inadequate explanation and insufficient reasoning as to why the district court accepted, on their face, the [victim]'s invoice" and explaining "[t]he government must provide sufficient explanations (supported by evidence reflected in the record) as to how these invoiced losses directly relate to [the defendant]'s criminal conduct involved in his underlying convictions.").

As in *Ferdman*, this Court may not simply "rubber stamp" the airline's claims, but must instead require the government to prove the actual amount of expenses --- what they are, how they were arrived at, and how they are directly related to the offense of conviction --- by a preponderance of the evidence.  *Ferdman*, 779 F.3d at 1133.  In the absence of such supporting evidence, the restitution sought by the airline cannot be sustained.

## CONCLUSION

Based upon the foregoing, restitution should not be imposed.  First, as a part of this Court's discretion under the VWPA (as opposed to the mandatory provisions of the MVRA), the various factors and circumstances in this case warrant no restitution obligation. 18 U.S.C. § 3663(a)(1)(B).  Second, the airline's request itself cannot be sustained because its expenses are not covered by the VWPA, and as well as being ambiguous and unsubstantiated.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
Attorney for Defendant

*I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.*

CERTIFICATE OF SERVICE

      I hereby certify that on May 5, 2020, I filed the foregoing **DEFENDANT'S OBJECTION TO RESTITUTION** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

      Emily May Treaster, Assistant United States Attorney
      E-mail: Emily.treaster@usdoj.gov

      I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

      Tony Jackson (via U.S. mail)

      s/ David E, Johnson
      DAVID E. JOHNSON
      Assistant Federal Public Defender
      633 17th Street, Suite 1000
      Denver, CO  80202
      Telephone:  (303) 294-7002
      FAX:  (303) 294-1192
      David_johnson@fd.org
      Attorney for Defendant